**RESNICK & LOUIS, P.C.**
Kenneth O. Taylor, III, Esq. (SBN: 253074)
Devin A. De Loa (SBN: 326063)
9891 Irvine Center Drive, Suite 200
Irvine, CA 92618
Telephone: (714) 709-4400
Facsimile: (714) 709-4400
Email: ktaylor@rlattornreys.com
        ddeloa@rlattorneys.com

*Attorneys for Defendants and Third-Pary Plaintiffs Andrew "Andy" Gold, and SBG Media Enterprise LLC*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TIBRIO LLC, a Delaware Limited Liability Company, | Case No: 3:25-cv-01068-GPC-JLB |
| Plaintiff, | |
| v. | **ANDREW "ANDY" GOLD, AND SBG MEDIA ENTERPRISE LLC'S THIRD-PARTY COMPLAINT FOR:** |
| SBG MEDIA, INC, a Florida Corporation; ANDREW "ANDY" GOLD, an individual, SBG MEDIA ENTERPRISE, LLC, a Florida Limited Liability Company; SBG MEDIA RESOURCES, LLC, a Florida Limited Liability Company, and DOES 1-100, inclusive. | **(1) EQUITABLE INDEMNITY;** **(2) CONTRIBUTION** **[FRCP RULE 14]** ***(DEMAND FOR JURY TRIAL)*** |
| Defendants | Hon. Gonzalo P. Curiel Complaint Filed: April 25, 2025 First Amended Complaint: May 21, 2025 |
| ANDREW "ANDY" GOLD, an individual, SBG MEDIA ENTERPRISE, LLC, a Florida Limited Liability Company, | |
| Third-Party Plaintiffs | |

**ANDREW "ANDY" GOLD, AND SBG MEDIA ENTERPRISE LLC'S THIRD-PARTY COMPLAINT**

1

v.

Liquid Web, LLC, a Delaware Corporation; Roes 1-50

Third-Party Defendants

THIS MATTER RELATES TO: action *TIBRIO LLC v. SBG MEDIA, INC. et al.*, Case No. 3:25-cv-01068-GPC-JLB.

Defendants and Third-Party Plaintiffs ANDREW "ANDY" GOLD, and SBG MEDIA ENTERPRISE LLC ("Third-Party Plaintiffs"), for their Third-Party Complaint, alleges as follows:

## JURISDICTION AND VENUE

1.      Plaintiff Tibrio LLC ("Plaintiff") has filed a First Amended Complaint (Doc 5) ("FAC") against Andrew "Andy" Gold, and SBG Media Enterprise LLC, among others, in the action above-entitled, Case No. 3:25-cv-01068-GPC-JLB. A copy of the FAC is attached as **Exhibit A**.

2.      2. If the Court has jurisdiction over the action represented by Exhibit A, it has jurisdiction over this Third-Party Complaint, pursuant to 28 U.S.C. § 1367.

3.      3. Rule 14(a) of the Federal Rules of Civil Procedure permits a defending party, as a third-party plaintiff, to serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it. The third-party plaintiff need not obtain leave of the court to serve and file a third-party complaint unless it is filed more than 14 days after serving its original answer. Fed. R. Civ. P. 14(a)(1).

**ANDREW "ANDY" GOLD, AND SBG MEDIA ENTERPRISE LLC'S THIRD-PARTY COMPLAINT**

## THE PARTIES

4.     Third-Party Plaintiff Andrew "Andy" Gold is a resident of Boca Raton Florida.

5.     Third-Party Plaintiff SBG Media Enterprise LLC is a Florida corporation, with its principal place of business located in Boyton Beach, Florida.

6.     Third Party Defendant Liquid Web LLC is a Delaware corporation, with its principal place of business located in Lansing Michigan.

7.     The true names and/or capacities, whether individual, corporate, associate, partnership, trust, or otherwise of Third-Party Defendants ROES 1 through 50, inclusive, and each of them, are unknown to Third-Party Plaintiffs, who therefore sues said defendants by such fictitious names. Third-Party Plaintiffs are informed and believe, and thereon allege, that each Third-Party Defendant fictitiously named herein as a ROE was legally responsible, negligently, or in some other actionable manner, for the events and happenings hereinafter referred to, and thereby proximately caused the injuries and damages to Plaintiff as hereinafter alleged. Third-Party Plaintiffs will amend this Third-Party Complaint to allege the true names and capacities of these ROES when they have been ascertained.

## BACKGROUND

## ALLEGATIONS IN PLAINTIFFS FAC

8.     Plaintiff's FAC alleges that Plaintiff Tibrio, LLC entered into a Publisher Services Agreement ("PSA") with, among others, Third-Party Plaintiff SBG Media

**ANDREW "ANDY" GOLD, AND SBG MEDIA ENTERPRISE LLC'S THIRD-PARTY COMPLAINT**

3

Enterprise, LLC for "the lawful and compliant distribution of advertising campaigns via e-mail," which included responsibilities to comply with federal and industry regulations. Plaintiff alleges that Third-Party Plaintiff Andrew 'Andy" Gold is the principal, owner, and alter-ego of SBG Media Enterprise, LLC.

9.    Plaintiff further alleges that a negligent transition of Third-Party Plaintiffs' hosting services resulted in the failure to properly transfer essential domain data, which rendered its e-mail transmissions "unlawful and non-compliant."  Plaintiff alleges that, as a direct result, it became the target of legal claims from third parties for violations of transparency laws and ultimately paid $91,000 in resolution costs and incurred $15,000 in attorneys' fees to settle those claims.

10.    By way of its FAC, Plaintiff seeks full reimbursement of its losses, along with attorneys' fees and all costs incurred, from Third-Party Plaintiffs and the other defendants to the action.

**<u>THIRD-PARTY DEFENDANTS</u>**

11.    Prior to the events alleged in Plaintiff's FAC, Third-Party Plaintiff SBG Media Enterprise, LLC registered certain domains with a company named Rackspace.

12.    Third-Party Plaintiffs are informed and believe, and thereupon allege, that the domains registered with Rackspace included the domains at issue in Plaintiff's FAC.

13.    Third-Party Plaintiffs are informed and believe, and thereupon allege, that Rackspace subsequently sold its cloud sites business unit (including the domains registered with Rackspace by Third-Party Plaintiff SBG Media Enterprise, LLC) to

Third-Party Defendant Liquid Web LLC.

14.    Third-Party Plaintiffs are informed and believe, and thereupon allege, that Third-Party Defendant Liquid Web subsequently applied "Privacy ID" to all domain registrations transferred to it.

15.    Third-Party Plaintiffs did not authorize the application of "Privacy ID," to is domains registered with Liquid Web and were not provided any notice that Privacy ID was applied to its domains registered by Liquid Web.

16.    In the event that, as a result of the FAC filed by Plaintiff, it is determined that Plaintiff has been damaged, such damages have been primarily and actively caused by the acts or omissions of Third-Party Defendant Liquid Web LLC, and not by the acts or omissions of Third-Party Plaintiffs.

17.    Third-Party Plaintiffs are informed and believe, and thereupon allege, that Third-Party Defendant Liquid Web LLC caused and/or contributed to some or all of the damages, if any, alleged in the FAC, and therefore have an obligation to defend, indemnify, and hold Third-Party Plaintiffs harmless for some, if not all, of the damages suffered by Plaintiff, if any.

18.    In order to prevent a multiplicity of litigation, a determination of the comparative fault, if any, of the parties to this action should be made at the trial of this action.

///

///

**ANDREW "ANDY" GOLD, AND SBG MEDIA ENTERPRISE LLC'S THIRD-PARTY COMPLAINT**

## FIRST CAUSE OF ACTION

### (Equitable Indemnity Against All Third-Party Defendants)

19.    Third-Party Plaintiffs incorporate by this reference and realleges herein paragraphs 1 through 18 of this Third-Party Complaint.

20.    Third-Party Plaintiffs are informed and believe and thereon allege that if Third-Party Plaintiffs are found to be liable to Plaintiff or others as a result of the FAC or that Plaintiff is otherwise entitled to recover against Third-Party Plaintiffs directly or indirectly, in any amount whatsoever, then such liability (i) will be the direct and proximate result of the wrongful conduct and/or the sole, active, and/or affirmative negligence of Third-Party Defendants, and each of them, as set forth herein, and/or Third-Party Defendants' failure to use reasonable care in maintaining Third-Party Defendants' domain registrations, or (ii) will have otherwise arisen out of or resulted from said Third-Party Defendants' failure to use reasonable care in maintaining Third-Party Defendants' domain registrations.

21.    Third-Party Plaintiffs are without active fault, culpability, or negligence in the above-referenced claim for damages but is being required to defend themselves in this action by Plaintiff, solely as a result of the tortious conduct of said Third-Party Defendants, and each of them, and/or their conduct in maintaining Third-Party Defendants' domain registrations.

22.    By reason of the foregoing, Third-Party Plaintiffs are informed and believe and thereon allege that if Third-Party Plaintiffs are held liable to Plaintiff upon its FAC,

then Third-Party Plaintiffs are entitled to be indemnified by Third-Party Defendants, and each of them, in whatever amount may be adjudged, and for the costs and expenses incurred to defend, evaluate, and/or settle the claims asserted in Plaintiff's FAC, including expert fees and attorneys' fees. Third-Party Plaintiffs further contend that they are entitled to be indemnified for expenditures prior to and after the filing of this Third-Party Complaint. The total amount of Third-Party Plaintiffs' costs and attorneys' fees are not yet known, and Third-Party Plaintiffs will seek leave of this Court to insert such amounts at the time of trial, as appropriate.

23.     Service of this Third-Party Complaint constitutes a demand that Third-Party Defendants, and each of them, defend the FAC by Plaintiff on behalf of Third-Party Plaintiffs.

## SECOND CAUSE OF ACTION

### (Contribution Against All Third-Party Defendants)

24.     Third-Party Plaintiffs incorporate by this reference and reallege herein paragraphs 1 through 23 of this Third-Party Complaint.

25.     Third-Party Plaintiffs deny any liability; but if such liability is found, Third-Party Plaintiffs will be entitled to recover full indemnity and/or total contribution against Third-Party Defendants, and each of them, for any amounts paid as damage resulting from or in settlement of the FAC because, upon information and belief, any such liability, damages, and/or settlement payments were, or will be found to be, solely or substantially caused by Third-Party Defendants' negligence, carelessness, recklessness,

**ANDREW "ANDY" GOLD, AND SBG MEDIA ENTERPRISE LLC'S THIRD-PARTY COMPLAINT**

and willful and wanton misconduct; whereas, the Third-Party Plaintiffs' alleged negligence or fault, if any, was passive and secondary only, consisting of failing to discover and/or remedy the allegedly negligent, tortious, or otherwise wrongful acts of said Third-Party Defendants, and each of them, as set forth in this Third-Party Complaint; thereby entitling Third-Party Plaintiffs to have the quantum of legally responsible conducted of Third-Party Defendants determined by this Court.

26.    Third-Party Plaintiffs further allege that if Plaintiff recovers any judgment against Third-Party Plaintiffs, the legally responsible conduct of Third-Party Defendants herein exceeded that of Third-Party Plaintiffs and Third-Party Plaintiffs are, therefore, entitled to contribution from and an apportionment of the liability of the Third-Party Defendants to the extent that the legally responsible conduct of the Third-Party Defendants proximately caused and contributed to the injuries and/or damages suffered by Plaintiff, if any, so that liability is ultimately assessed among the parties in direct proportion to the percentages of fault respectively attributable to their conduct.

27.    By reason of said wrongful conduct, Third-Party Plaintiffs have been forced to incur attorneys' fees and other expenses in an unascertained amount in its defense of the action herein.

## **PRAYER FOR RELIEF**

28.    WHEREFORE, Defendants and Third-Party Plaintiffs Andrew "Andy" Gold, and SBG Media Enterprise LLC pray for judgment against Third-Party Defendants, as follows:

**ANDREW "ANDY" GOLD, AND SBG MEDIA ENTERPRISE LLC'S THIRD-PARTY COMPLAINT**

**On the First Cause of Action for Equitable Indemnity**

1.      For a judgment of indemnity in favor of Andrew "Andy" Gold, and SBG Media Enterprise LLC against Third-Party Defendants, and each of them, for the amount of any settlement, compromise, or judgment obtained by Plaintiffs, or in the alternative for the portion of any settlement, compromise, award, or judgment equal to a proportionate share of fault of Third-Party Defendants, and each of them; and for any sums expended by Third-Party Plaintiffs to defend, evaluate, and/or settle Plaintiff's claims;

2.      For interest on those sums at the maximum rate allowed by law or contract;

3.      For attorneys' fees pursuant to California Code of Civil Procedure section 1021.6;

4.      For costs of suit incurred herein; and

5.      For such other and further relief as the Court may deem just and proper. **On the Second Cause of Action for Contribution**

6.      For the portion of any settlement, compromise, award, or judgment equal to a proportionate share of fault of Third-Party Defendants, and each of them;

7.      For costs of suit incurred herein; and

8.      For such other and further relief as the Court may deem just and proper.

///

///

///

**ANDREW "ANDY" GOLD, AND SBG MEDIA ENTERPRISE LLC'S THIRD-PARTY COMPLAINT**

# DEMAND FOR JURY TRIAL

Defendant hereby demands a jury trial.

**DATED:** July 14, 2025                    **RESNICK & LOUIS, P.C.**

_____

Kenneth O. Taylor III, Esq.
Devin A. De Loa, Esq.
*Attorneys for Third-Party Plaintiffs*
*Andrew "Andy" Gold and SBG Media*
*Enterprise LLC*

**ANDREW "ANDY" GOLD, AND SBG MEDIA ENTERPRISE LLC'S THIRD-PARTY COMPLAINT**

EXHIBIT "A"

Jacob A. Gillick, Esq., SBN 312336
Gillick Legal, APC
3990 Old Town Ave
Suite A200
San Diego, CA 92101
Telephone: (858) 250-0656

Attorneys for Plaintiff Tibrio, LLC

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIBRIO, LLC, a Delaware Limited Liability Company<br><br>Plaintiff,<br><br>v.<br><br>SBG MEDIA, INC, a Florida Corporation; ANDREW "ANDY" GOLD, an individual, SBG MEDIA ENTERPRISE, LLC, a Florida Limited Liability Company; SBG MEDIA RESOURCES, LLC, a Florida Limited Liability Company, and DOES 1-100, inclusive.<br><br>Defendants. | Case No. 3:25-cv-01068-GPC-JLB<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>**(1) BREACH OF WRITTEN CONTRACT**<br>**(2) BREACH OF ORAL CONTRACT**<br>**(3) BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**<br>**(4) IMPLIED CONTRACTUAL INDEMNITY**<br>**(5) NEGLIGENCE** |

1

# I.

## INTRODUCTION

1.      This is a straightforward case of breach, indemnity, and accountability. ZeetoGroup, LLC—and later Plaintiff Tibrio, LLC ("Tibrio")—entered into a Publisher Services Agreement ("PSA") with Defendants SBG Media, Inc., SBG Media Enterprise, LLC, and SBG Media Resources, LLC (collectively "SBG") for the lawful and compliant distribution of advertising campaigns via e-mail. In doing so, Tibrio entrusted SBG with compliance-critical responsibilities governed by federal and industry regulations.

2.      In 2024, a negligent transition of SBG's hosting services resulted in the failure to properly transfer essential domain data—thereby rendering its e-mail transmissions unlawful and non-compliant. As a direct result, Tibrio became the target of legal claims from third parties for violations of transparency laws.

3.      Rather than engage in costly litigation, Tibrio mitigated damages through settlement, paying $91,000 in resolution costs and incurring $15,000 in attorneys' fees. SBG, and its principal Andrew "Andy" Gold, acknowledged their duty to indemnify Tibrio and repeatedly promised reimbursement. But despite these representations, no payment has been made.

4.      Tibrio now seeks to enforce the PSA's indemnity provisions and hold Defendants accountable for breach of contract, breach of the implied covenant of good faith and fair dealing, oral agreement to indemnify, and related negligence. Tibrio respectfully requests full reimbursement of its losses, along with attorneys' fees and all costs incurred as a result of Defendants' wrongful conduct.

# II.

## PARTIES

5.      Plaintiff Tibrio, LLC ("Plaintiff" or "Tibrio") is located in Forth Worth, Texas and creates advertising campaigns for clients which are then sent to publishers for distribution pursuant to a profit-sharing arrangement.  Defendants signed Tibrio's Publisher Services Agreement ("PSA") as a publisher for the transmission of e-mail campaigns.  As described

2

below, Defendants have breached the PSA by failing to comply with all relevant and applicable laws, causing Tibrio significant damages. Therefore, Tibrio seeks the remedies as described herein.

6.     Defendant SBG Media, Inc., is located in Boynton Beach, Florida and acts as a publisher for advertisers, including the transmission of marketing e-mails. SBG Media, Inc., signed Tibrio's PSA for the transmission of e-mail campaigns. As described herein, SBG Media Inc., breached the PSA by failing to comply with all relevant and applicable laws, causing Tibrio significant damages. Therefore, Tibrio seeks the remedies as described herein.

7.     SBG Media Enterprise, LLC, is located in Boynton Beach, Florida and acts as a publisher for advertisers, including the transmission of marketing e-mails. SBG Media Enterprise, LLC signed Tibrio's PSA for the transmission of e-mail campaigns. As described herein, SBG Media Enterprise, LLC breached the PSA by failing to comply with all relevant and applicable laws, causing Tibrio significant damages. Therefore, Tibrio seeks the remedies as described herein.

8.     SBG Media Resources, LLC (collectively "SBG") is located in Boynton Beach, Florida and acts as a publisher for advertisers, including the transmission of marketing e-mails. SBG Media Resources, LLC signed Tibrio's PSA for the transmission of e-mail campaigns. As described herein, SBG Media Resources, LLC breached the PSA by failing to comply with all relevant and applicable laws, causing Tibrio significant damages. Therefore, Tibrio seeks the remedies as described herein.

9.     Defendant Andrew "Andy" Gold ("Gold") is a resident of Boynton Beach, Florida and is the principal, owner, and alter-ego of SBG as described herein. Gold is not only the alter-ego, but he agreed to indemnify Tibrio for SBG's breach of the PSA. To date, Gold failed to execute his promises which has caused significant damages to Tibrio. Therefore, Tibrio seeks the remedies as described herein.

10.    The true names and/or capacities, whether individual, corporate, associate, partnership, trust, or otherwise of Defendant DOES 1 through 100, inclusive, and each of them, are unknown to Plaintiff, who therefore sues said defendants by such fictitious names.  Plaintiff

is informed and believes, and thereon alleges, that defendant fictitiously named herein as a DOE was legally responsible, negligently, or in some other actionable manner, for the events and happenings hereinafter referred to, and thereby proximately caused the injuries and damages to Plaintiff as hereinafter alleged.  Plaintiff will amend this Complaint to allege the true names and capacities of these DOES when they have been ascertained.

### III.

### ALTER EGO ALLEGATIONS

11.     Defendants Andrew "Andy" Gold and DOES 1-100, (hereinafter collectively referred to as the "Principals") at all relevant times, were and are the shareholders, members, principals and controllers of SBG Media, Inc., SBG Media Enterprise, LLC, and SBG Media Resources, LLC (collectively the "Entities").

12.     The Principals, at all relevant times hereto, commanded, influenced, and controlled the affairs of the Entity. Furthermore, at all relevant times related hereto, the Principals acted outside of any agency relationship afforded by the Entities' corporate status and in fact acted in such a way as to completely disregard and ignore any recognized corporate formalities or purpose to the Entities operation.

13.     At all relevant times hereto, there existed such a unity of interest and ownership between and among the Principals and Entities that the individuality and separateness of each and all of the Defendants ceased to and in fact never did exist.

14.     At all relevant times hereto, the Entities are being used by the Principals as a mere shell and naked framework for the Principals as individuals. In this regard, the Principals used the Entities as a conduit to conduct their personal business, property, and affairs as a device to avoid individual liability.

15.     "Under the alter ego doctrine, then, when the corporate form is used to perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose, the courts will ignore the corporate entity and deem the corporation's acts to be those of the persons or organizations actually controlling the corporation, in most instances the equitable owners." (*Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 538.)

4

16.    "In California, two conditions must be met before the alter ego doctrine will be invoked. First, there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist.  Second, there must be an inequitable result if the acts in question are treated as those of the corporation alone." (*Sonora Diamond Corp. v. Superior Court*, supra, 83 Cal.App.4th at 538.)

17.    Based on the foregoing and on the facts above, it would be inequitable and unjust to continue to treat the Principals and Entity as separate entities and thus the Principals should be considered the alter egos of the Entity.

## IV.

## VENUE AND JURISDICTION

18.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a).  Tibrio, LLC is a Delaware Limited Liability Company conducting business out of Forth Worth, Texas. Its owner and principal, for all intents and purposes is living in Dubai.

19.    SBG Media, Inc., is a Boynton Beach, Florida operating out Boynton Beach, Florida. Based on information and belief, its owner, principal and alter-ego, Andrew Gold, is also a resident of Boynton Beach, Florida.

20.    SBG Media Enterprise, LLC, is a Boynton Beach, Florida operating out Boynton Beach, Florida. Based on information and belief, its owner, principal and alter-ego, Andrew Gold, is also a resident of Boynton Beach, Florida.

21.    SBG Media Resources, LLC, is a Boynton Beach, Florida operating out Boynton Beach, Florida. Based on information and belief, its owner, principal and alter-ego, Andrew Gold, is also a resident of Boynton Beach, Florida.

22.    Each Defendant is of a different citizenship than each Plaintiff and the amount in controversy exceeds $100,000 and therefore is more than the minimum of $75,000 for diversity jurisdiction.

23.    Venue in this district is proper under 28 U.S.C. §1391(b), because a substantial part of the events and omissions underlying this lawsuit occurred in San Diego, California,

where the contract at issue was executed and where many of the services were executed before Plaintiff's relocation to Texas.

## V.

## STATEMENT OF FACTS

24.     In the online advertising industry, an "advertiser" is a business entity that creates and funds advertisements to promote products or services on behalf of clients. The advertiser— here, ZeetoGroup, LLC then later Plaintiff Tibrio, LLC ("Tibrio"), —relies on third parties to deliver these ads to relevant consumers. A "publisher," by contrast, is an entity that owns or controls digital real estate (such as websites, applications, or e-mail lists) and is responsible for displaying those advertisements, or in this instance transmitting e-mails, to users in exchange for a profit-sharing agreement.

25.     Here, the Publishers are Defendants SBG Media, Inc., SBG Media Enterprise, LLC, and SBG Media Resources, LLC (collectively "SBG"). Pursuant to the Publisher Services Agreement ("PSA") between the parties dated January 23, 2015, SBG agreed to distribute Plaintiffs advertising content to generate user engagement (e.g., clicks, leads, or conversions), for which SBG would be paid according to performance-based terms. A true and correct copy of the PSA is attached hereto as "Exhibit 1."

26.     Pursuant to section eight (8) of the PSA, SBG agreed that "at all times, the Advertising Material (and its transmission) and its performance [] shall comply with all applicable laws, rules, regulations, and ordinances." Under section nine (9) the parties agreed to indemnify each other, and its directors, officers, employees, and agents, from and against "any and all actions, claims, demands, proceedings, liability judgments, settlements, fines, penalties, costs and expenses, including attorneys' fees and related costs [] which: (i) arise solely or in part from the acct(s) and/or omission(s) of the Indemnifying Party."

27.     In or around mid-2024, SBG had their websites hosted with a company that was acquired by a new provider. When the new company took over, they failed to transfer all the necessary data. Because of that, some key information about where SBG's e-mails were coming from was missing, which violated relevant laws about being clear and transparent in online

1   advertising. This caused claims to be asserted against Tibrio, which were promptly settled to

2   avoid the unnecessary costs of litigation. In total, $91,000 was paid to settle the claims, and

3   $15,000 in attorneys' fees were incurred.

4         28.    SBG and its alter-ego, Andy Gold ("Gold"), were aware of the claims against

5   Tibrio, its duty to indemnify Tibrio, and that the matter had been settled. Repeatedly, SBG and

6   Gold, jointly and severally, agreed to reimburse Tibrio for the costs incurred due to SBG's lack

7   of compliance with relevant laws. However, as of the date of this Complaint, no payment has

8   been received by Tibrio despite repeated good-faith requests. Therefore, Tibrio seeks the costs

9   of settlement, attorneys' fees incurred in obtaining the settlement, and the costs associated with

10  the filing and litigation of the instant lawsuit.

11  **VI.**

12  **CAUSES OF ACTION**

13  **FIRST CAUSE OF ACTION**

14  **BREACH OF WRITTEN CONTRACT**

15  **(Plaintiff against All Defendants and DOES 1-100)**

16        29.    Plaintiff incorporates by reference the allegations set forth above as though fully

17  restated herein.

18        30.    On January 23, 2015, the parties entered into the Publisher Services Agreement

19  ("PSA") attached hereto as "Exhibit 1."

20        31.    Pursuant to section eight (8) of the PSA, Defendants agreed to "comply with all

21  applicable laws, rules, regulations, and ordinances." However, in or around 2024 the company

22  that hosted SBG's properties was purchased by a company that failed to transfer all the

23  necessary data—causing key information about SBG to be noncompliant with relevant laws.

24  This caused claims to be asserted against Plaintiff. Plaintiff complied with all the duties and

25  obligations contained in the PSA.

26        32.    In late 2024, claims were asserted against Tibrio based on Defendants' breach of

27  relevant transparency laws. Due to the clear liability, Tibrio settled the claims for $91,000 and

28  incurred $15,000 in attorneys' fees.

7

33.    Pursuant to section nine (9) of the PSA, SBG agreed to indemnify Tibrio for any "act or omission," which includes the omission of ensuring compliance with relevant laws.

34.    SBG and Defendant Andy Gold ("Gold") jointly and severally agreed to comply with the indemnity agreement but have failed to remit payment.

35.    Based on these breaches, Defendants are responsible for the settlement payment and all attorneys' fees and costs associated.

<strong><u>SECOND CAUSE OF ACTION</u></strong>

<strong><u>BREACH OF ORAL CONTRACT</u></strong>

<strong><u>(Plaintiff against All Defendants and DOES 1-100)</u></strong>

36.    Plaintiff incorporates by reference the allegations set forth above as though fully restated herein.

37.    In late 2024, claims were asserted against Tibrio, for Defendants' violation of relevant transparency laws. Due to the clear liability, Tibrio settled the claims for $91,000 and incurred $15,000 in attorneys' fees.

38.    Defendants agreed orally to indemnify Plaintiff for the cost of settlement, attorneys' fees, and costs. Despite this agreement, Defendants have failed to indemnify Plaintiff. Plaintiff, on the other hand, complied with all its duties and obligations.

39.    Based on these breaches, Defendants are responsible for the settlement payment and all attorneys' fees and costs associated.

<strong><u>THIRD CAUSE OF ACTION</u></strong>

<strong><u>BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING</u></strong>

<strong><u>(Plaintiff against All Defendants and DOES 1-100)</u></strong>

40.    Plaintiff incorporates by reference the allegations set forth above as though fully restated herein.

41.    Plaintiff and Defendants entered into the PSA attached hereto as "Exhibit 1" which mandates indemnity in the event of any acts or omissions. As described herein,

1    Defendants failed to ensure compliance with relevant transparency laws while transmitting

2    Plaintiff's advertising materials.

3        42.    Plaintiff did all of the significant things that the contract required it to do, and the

4    conditions required for Defendants' performance (indemnity) had occurred when Plaintiff was

5    forced to settle claims against it.

6        43.    Defendants failed to satisfy the terms of the PSA by indemnifying Plaintiff.

7        44.    By doing so, Defendants did not act fairly and in good faith and Plaintiff was

8    harmed by Defendants' conduct. Plaintiff therefore demands reimbursement of the settlement

9    payment, attorneys' fees, and costs.

10                         **FOURTH CAUSE OF ACTION**

11                      **IMPLIED CONTRACTUAL INDEMNITY**

12                  **(Plaintiff against All Defendants and DOES 1-100)**

13        45.    Plaintiff incorporates by reference the allegations set forth above as though fully

14    restated herein.

15        46.    As described herein, Defendants failed to use reasonable care and acted

16    negligently in performing the work under the PSA by failing to ensure that they complied with

17    all relevant transparency laws. These actions constitute a breach of section eight (8) of the PSA.

18        47.    This conduct caused Plaintiff substantial harm in the form of a settlement

19    payment and attorneys' fees to third-party claimants.

20        48.    Plaintiff therefore demands indemnity for the settlement payment, attorneys'

21    fees, and costs.

22    / / /

23    / / /

24    / / /

25    / / /

26    / / /

27    / / /

28    / / /

**FIFTH CAUSE OF ACTION**

**NEGLIGENCE**

**(Plaintiff against All Defendants and DOES 1-100)**

49.    Plaintiff incorporates by reference the allegations set forth above as though fully restated herein.

50.    Separate and apart from the contractual terms detailed in the PSA, Defendants owed a duty to Plaintiff to comply with all relevant laws while acting as a publisher of Plaintiff's marketing e-mails. Specifically, Defendants should have ensured that SBG's identifying information was properly transferred when a new company obtained SBG's domain provider. By not ensuring this transition complied with all applicable laws, SBG violated privacy laws and breached its duty to Plaintiff.

51.    Defendants acts and omissions were the actual, proximate, and legal cause of the breach which harmed Plaintiff in the form of having to defend claims for violation of relevant disclosure laws.

52.    Plaintiff was damaged for $91,000 in settlement payments, $15,000 in attorneys' fees, and any another costs and fees associated with the instant action.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against all Defendants, as follows:

1.    Damages in an amount to be proven at trial;

2.    For reasonable attorney's fees;

3.    For prejudgment and post-judgment interest, according to proof;

4.    For costs of suit incurred herein; and,

5.    For such other and further relief as this Court deems just and proper.

Dated:  May 21, 2025          **Gillick Legal, APC**

By: _____
Jacob A. Gillick, Esq.
Attorneys for Plaintiff Tibrio, LLC

10

# EXHIBIT 1

## PUBLISHER SERVICES AGREEMENT

This Publisher Services Agreement ("Agreement") entered into on ___1/23/15___ ("Effective Date"), as well as any Insertion Orders ("IO") subsequently entered into, shall govern the relationship between ZeetoGroup, LLC dba Zeeto Media, ("Advertiser" or "Zeeto"), a Delaware limited liability company located at 925 B Street, Fifth Floor, San Diego, CA 92101, and ___Sby Media___, ("Publisher"), a _____ having primary offices at _____ , in connection with the advertising and marketing services provided to Advertiser by Publisher. If not otherwise defined, the terms used herein shall have the meaning specified in the Agreement.

Publisher may earn Payouts for Advertiser's Program only if it complies with the following requirements:

1. <u>Services</u>. In connection with the advertising and marketing services ("Services"), Publisher may undertake campaigns for Advertiser (each a "Campaign"), whereby Publisher may distribute Advertiser's proprietary materials including, but not limited to, online display ads, graphic files, and similar media ("Advertising Material"). Publisher will only distribute Advertising Material internally and shall not distribute or re-sell Advertising Material to any external third party without Advertiser's written consent. In connection with such Campaigns, Advertiser shall pay Publisher for compensable transactions generated on behalf of Advertiser as set forth in the applicable IO.

2. <u>Advertising Material</u>. Advertiser grants to Publisher a non-exclusive, transferable, revocable, sub-licensable right and license to use, reproduce, display, transmit, and distribute the Advertising Material for the purposes of performance of this Agreement. No material changes shall be made to any Advertising Material without Advertiser's prior consent.

3. <u>Payment</u>. Publisher shall invoice Advertiser monthly, and unless otherwise set forth in the applicable IO, payment will be due to Publisher within thirty (30) days of the end of the month. Advertiser shall have ten (10) business days from its receipt of an invoice to notify Publisher of any dispute relating to such invoice.

4. <u>General.</u> Any web sites, emails, advertisements, links, or other media properties used to promote, display or transmit the Advertiser's Program shall meet the following requirements:

    (a) not include content that is deceptive or misleading or otherwise fails to comply with applicable federal and state consumer protection laws;

    (b) not infringe upon the personal rights, trademark, trade name, logo, publicity right, copyright, or other intellectual property (collectively, "Marks") of any third party;

    (c) not contain content that is an invasion of privacy, degrading, libelous, unlawful, deceptive, profane, obscene, pornographic, tends to ridicule or embarrass, or is in bad taste, at the sole discretion of Advertiser;

    (d) not offer incentives, points, rewards, cash, or prizes to consumers in return for their response to the advertisement;

    (e) not spawn malicious, false, or deceptive pop-ups or exit pop-ups;

    (f) not serve advertisements, or drive traffic to advertisements, using any spyware or similar downloadable application;

PUBLISHER SERVICES AGREEMENT
CONFIDENTIAL
v.7.13.2014

PAGE 1 OF 4

ADVERTISER INITIALS: _____

PUBLISHER INITIALS: _____

(g) not use any methods to generate Leads or Sales that are not initiated by the affirmative action of a consumer;

(h) not constitute any advertising via facsimile or telemarketing (including, without limitation, by use of prerecorded or artificial voice messages);

(i) not constitute any advertising to wireless devices or portable electronic devices by text messaging in any form (including without limitation SMS, Smart Messaging, EMS, and MMS);

(j) not promote any illegal activity including without limitation the promotion of gambling, illegal substances, software piracy, or hacking;

(k) not spoof, or redirect, traffic to or from any adult-oriented web sites or any other web sites not specifically designated by Advertiser as a Landing Page.

5.  Email Marketing.   Publisher must receive Advertiser's prior written consent before engaging in any email marketing.  If Advertiser approves email marketing by Publisher, Publisher shall:

(a) Ensure that each email message includes (i) clear and conspicuous notice of the recipient's right to opt-out of receiving future commercial messages from Advertiser, as specified by Advertiser for each campaign; and (ii) a functional electronic mechanism that the recipient can use to make such an opt-out request, in compliance with the requirements of the CAN-SPAM Act and Federal Trade Commission regulations implementing the CAN-SPAM Act.

(b) Ensure that "subject" and "from" lines used in any email communications are truthful and non-misleading and do not otherwise violate the CAN-SPAM Act or any applicable state laws and do not infringe on the intellectual property rights of any third party.  Advertiser may provide "subject" and "from" lines to be used by Publisher.  Publisher is prohibited from removing or altering "subject" and "from" lines provided by Advertiser.

6.  Privacy Policy.  If Publisher uses a web site to promote Advertiser's Program, it must include a clear and conspicuous privacy policy that complies with the requirements of Cal. Bus. & Prof. Code § 22575-22579 (a California statute) and specifically states that consumer information collected through the site will be shared with third parties for marketing, fulfillment, or any other purposes.

7.  Confidential Information.  For purposes of this Agreement, "Confidential Information" shall mean all data and information, of a confidential nature or otherwise, disclosed during the term of the Agreement by one party ("Disclosing Party") to the other party ("Receiving Party"), as well as information that the Receiving Party knows or should know that the Disclosing Party regards as confidential.  Confidential information does not include information that: (i) is in or enters the public domain without breach of this Agreement; (ii) the Receiving Party lawfully knew prior to receiving such information from the Disclosing Party; or (iii) the Receiving Party develops independently without the use of Disclosing Party's Confidential Information.  The Receiving Party agrees that it: (i) will not, for any reason or under any circumstance, directly or indirectly use, convert, apply, appropriate, employ, alter, transform, assign, put into operation or otherwise use any Confidential Information, in whole or in party, for any purpose whatsoever, other than as expressly permitted herein; (ii) will not disclose to any third party Confidential Information except as expressly permitted in this Agreement or as otherwise necessary to perform its obligations or exercise its rights under this Agreement; and (iii) will take all reasonable measures to maintain the confidentiality of the Confidential Information in its possession or control.

PUBLISHER SERVICES AGREEMENT
CONFIDENTIAL
v.7.13.2014

PAGE 2 OF 4

ADVERTISER INITIALS: _____

PUBLISHER INITIALS

Notwithstanding the foregoing, either party may disclose Confidential Information as necessary to comply with the requirements of legal or administrative processes, provided that such Party provides the other Party with reasonable advance notice of any such intended disclosure and cooperates reasonably with its efforts to obtain a protective order.

8.  Representations and Warranties.  Each party represents and warrants that: (i) it has the power and authority to enter into and perform its obligations under this Agreement; and (ii) at all times, the Advertising Material (and its transmission) and its performance hereunder shall comply with all applicable laws, rules, regulations, and ordinances (collectively, "Laws") and will not violate any applicable rights of any third party.

9.  Indemnity.  Each party (the "Indemnifying Party") agrees to indemnify, defend, and hold the other party and its directors, officers, employees, and agents (the "Indemnified Party") harmless from and against any and all actions, claims, demands, proceedings, liabilities, judgments, settlements, fines, penalties, costs and expenses, including attorneys' fees and related costs (collectively, "Losses") which: (i) arise solely or in part from the act(s) and/or omission(s) of the Indemnifying Party; or (ii) arise from or are related to a breach by the Indemnifying Party of any express warranty herein.  The Indemnified Party will promptly notify the Indemnifying Party of any such claim it becomes aware and will provide reasonable cooperation to the Indemnifying Party at the Indemnifying Party's expense in connection with the defense or settlement of any such claim and be entitled to participate at is own expense in the defense of any such claim.

10.  Disclaimer/Limitation of Liability.  NEITHER PARTY MAKES ANY EXPRESS OR IMPLIED WARRANTY, TO THE EXTENT PERMISSIBLE BY LAW, OTHER THAN THE WARRANTIES EXPRESSED IN THIS AGREEMENT, IF ANY.  EACH PARTY SPECIFICALLY DISCLAIMS ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.  IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR ANY INDIRECT OR DIRECT LOST PROFITS, OR OTHER INCIDENTAL, CONSEQUENTIAL, OR SPECIAL DAMAGES, EVEN IF SUCH PARTY WAS OR SHOULD HAVE BEEN AWARE OR WAS ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.  NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, OTHER THAN FOR PAYMENT OBLIGATIONS, EACH PARTY'S TOTAL CUMULATIVE LIABILITY HEREUNDER, FROM ALL CAUSES OF ACTION OF ANY KIND, SHALL BE LIMITED TO THE AMOUNTS PAID TO PUBLISHER BY ADVERTISER DURING THE SIX (6) MONTHS PRIOR TO THE DATE THE CAUSE OF ACTION AROSE.

11.  Termination.  Either party may terminate this Agreement by providing the other party with two (2) business days prior written notice.  Any provisions of this Agreement that may reasonably be expected to survive termination or expiration of the Agreement shall survive and remain in effect in accordance with their terms.

12.  Miscellaneous.
    (a) **Failure to Comply.**  Without limiting any other remedies specified herein or otherwise available to Advertiser, Publisher's failure to comply with the requirements of this Agreement will result in non-payment for the entire Program and may result in termination of Publisher's eligibility to promote Advertiser's Programs, at Advertiser' sole discretion.

    (b) **Sub-Publishers.**  Publisher is prohibited from using any Sub-Publisher(s) except as pre-approved by Advertiser in writing.  All approved Sub-Publishers are contractually required to comply with the Advertiser's Program Terms including, without limitation, this Agreement.

PUBLISHER SERVICES AGREEMENT
CONFIDENTIAL
v.7.13.2014

PAGE 3 OF 4

ADVERTISER INITIALS: _____

PUBLISHER INITIALS: _____

(c) **Assignment**. Neither party may assign, transfer, or delegate any of its rights or obligations under the Agreement without the prior consent of the other party; any attempts to do so shall be null and void.

(d) **Choice of Law/Venue**. This Agreement shall be governed and construed in accordance with the laws of California. The parties hereby agree to submit to the exclusive jurisdiction of the federal or state courts of the State of California, located in San Diego County for all disputes that arise under or relate to this Agreement. The parties further agree to comply with all requirements necessary to give such court jurisdiction. The prevailing party in any dispute arising from or related to this Agreement shall, in addition to any and all damages awarded, be entitled to an award of reasonable attorney's fees and costs.

(e) **Non-Waiver/Severability**. The failure of either party to enforce performance by the other party of any provision of this Agreement or to exercise any right under this Agreement shall not be construed as a waiver of such party's right to assert such provision. If any portion of this Agreement is ruled by a court of competent jurisdiction to be unlawful, void, or for any reason unenforceable, then, to the maximum extent permitted by law, the provision shall be reformed to reflect the intent of the parties, or if the provision cannot be so reformed, it shall be severed from the contract, and such severance shall not affect the validity and enforceability of the remaining provisions of this Agreement.

(f) **Relationship of the Parties**. The parties hereto are independent contractors. There is no relationship of partnership, joint venture, employment or franchise relationship between the parties. Neither party has the authority to bind the other or incur any obligation on its behalf.

(g) **Entire Agreement**. This Agreement, together with the IOs, is the complete agreement between the parties with respect to the subject matter hereof, and supersedes and replaces all prior agreements, communications, and understandings (both written and oral) regarding such subject matter. The terms and conditions of this Agreement will prevail over any contrary or inconsistent terms in any other writing. Any electronic terms either party may be required to accept of the other party shall be of no force and effect, even if such acceptance occurs prior to, contemporaneous with, or subsequent to this Agreement or an IO. This Agreement may only be modified by a written document executed by both parties.

**I HAVE READ AND AGREE TO THE TERMS SET FORTH IN THIS AGREEMENT.**

**ZEETOGROUP, LLC**

BY (SIGNATURE): _____
NAME: _____
TITLE: _____
DATE: _____

**ADVERTISER:** Sbg Media Inc

BY (SIGNATURE): _____
NAME: Mel Gold
TITLE: CEO
DATE: 1/23/15

PUBLISHER SERVICES AGREEMENT
CONFIDENTIAL
v.7.13.2014

PAGE 4 OF 4

ADVERTISER INITIALS: _____

PUBLISHER INITIALS: _____