Jacob A. Gillick, Esq., SBN 312336
3990 Old Town Ave
Suite A200
San Diego, CA 92101
Telephone: (858) 250-0656
E-Mail: JGillick@GillickLegal.com

Attorneys for Plaintiff Tibrio, LLC

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIBRIO, LLC, a Delaware Limited Liability Company<br><br>Plaintiff,<br><br>v.<br><br>SBG MEDIA, INC., a Florida Corporation; ANDREW "ANDY" GOLD, an individual; SBG MEDIA ENTERPRISE, LLC, a Florida Limited Liability Company; SBG MEDIA RESOURCES, LLC, a Florida Limited Liability Company; and DOES 1–100, inclusive.<br><br>Defendants. | Case No. 3:25-cv-01068-GPC-JLB<br><br>**PLAINTIFF TIBRIO, LLC'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

## I.

## <u>INTRODUCTION</u>

Defendants' Motion to Dismiss asks the Court to resolve factual disputes and weigh competing inferences that cannot be decided on a Rule 12(b)(6) motion. The Second Amended Complaint ("SAC") pleads a straightforward theory: Defendants—operating interchangeably under the "SBG Media" business identity and controlled by Andrew "Andy" Gold—accepted the benefits of a long-running publisher relationship under the parties' Publisher Services Agreement

1

("PSA"), assumed compliance-critical responsibilities for lawful email distribution, and then, through acts and omissions, caused Plaintiff to incur third-party claims that Plaintiff prudently settled.

Defendants' primary attack is formalistic—i.e., that the "wrong" SBG entity (or no SBG entity at all) is before the Court, and that Plaintiff must produce documentary "proof" of assignment or entity identity at the pleading stage. But the SAC alleges a continued course of dealing, performance, invoicing, and communications showing assent and ratification of the operative business relationship, as well as alter-ego and conspiracy facts showing the SBG entities and Gold acted as a single enterprise to perform, benefit from, and then evade responsibility for the PSA.

At minimum, Plaintiff has plausibly pleaded liability against each moving Defendant. And to the extent Defendants contend the real party in interest is ZeetoGroup, LLC (the PSA signatory), Plaintiff is already taking steps to cure any technical issue by adding ZeetoGroup, LLC as a co-plaintiff—an amendment that would eliminate the hyper-technical arguments Defendants now press while preserving the merits for adjudication on a complete record. For these reasons, Defendants' Motion should be denied. In the alternative, leave to amend should be freely granted.

## II.

## PLAINTIFF'S ALLEGATIONS

Advertisers like ZeetoGroup, LLC and its then-subsidiary, Plaintiff Tibrio, LLC ("Tibrio"), rely on third parties to deliver ads to relevant consumers. SAC ¶ 31. Tibrio was spun off into an independent entity in or around early 2016 and was assigned agreements relevant to the services offered—including the agreement at issue here. *Id.* at fn. 1. Correspondences and invoices between the parties evidence assent to the assignment. *Ibid.*

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

A publisher, unlike an advertiser, owns and controls digital real estate, such as websites, and is responsible for displaying advertisements or transmitting emails to users in exchange for a profit-sharing agreement. *Id.* at ¶ 31.

Here, the publishers are Defendants SBG Media, Inc. ("SBG Media"), SBG Media Enterprise, LLC ("SBG Enterprise"), and SBG Media Resources, LLC ("SBG Resources"), collectively referred to as "SBG." *Id.* at ¶ 32. Pursuant to the Publisher Services Agreement ("PSA") dated January 23, 2015, SBG agreed to distribute Plaintiff's advertising content to generate user engagement. *Ibid.* A copy of the PSA is attached to the SAC as Exhibit 1.

Pursuant to the PSA, Defendants agreed to comply with all applicable laws. *Id.* at ¶ 33. The parties also agreed to indemnify each other for any third-party claims, liabilities, judgments, settlements, attorneys' fees, or penalties related to any breach of the PSA. *Ibid.*

In mid-2024, SBG had its websites hosted with a company that was acquired by a new provider, and the transition was handled in a way that necessary domain and/or identifying data was not properly transferred, resulting in unlawful and noncompliant email transmissions. *Id.* at ¶ 34. This included key information required to be disclosed to recipients regarding the origin of the emails. *Ibid.* This caused claims to be asserted against Plaintiff, which were promptly settled to avoid the unnecessary costs of litigation, totaling $91,000 plus $15,000 in attorneys' fees. *Id.*

SBG and its alter ego, Andy Gold ("Gold"), were aware of the claims against Plaintiff, their duty to indemnify, and that the matter had been settled. *Id.* at ¶ 36. Repeatedly, SBG and Gold, jointly and severally, agreed to reimburse Plaintiff for the costs incurred due to SBG's lack of compliance with relevant laws. *Ibid.* However, as of the filing of the SAC, no payment has been received despite repeated good-faith requests.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

SBG Media, SBG Enterprise, and SBG Resources all act as publishers for advertisers, including the transmission of marketing emails. *Id.* at ¶¶ 6–8. SBG Resources may have transformed into a payroll processing company. *Id.* at ¶ 8. Gold is a resident of Boynton Beach, Florida and is the principal, owner, and alter ego of the SBG entities. *Id.* at ¶ 9.

Although SBG Media executed the PSA, upon initiation of this dispute, SBG Enterprise emerged as the operating arm of the same business, openly acknowledging involvement with the PSA without denying the validity of the agreement. *Id.* at ¶ 19. Plaintiff believes SBG Resources likewise operated as part of the same collective enterprise, providing related services under the PSA and sharing ownership, personnel, and management with the other SBG entities. *Ibid.*

The SBG entities were intentionally created, dissolved, and revived at different times to shield assets, obscure liability, and allow Defendants to choose whichever entity would be most financially convenient or judgment-proof in the event of a dispute. *Id.* at ¶ 20. This pattern of formation and use demonstrates coordination and agreement among the entities and Gold to operate interchangeably under a single business identity while maintaining separate legal names for the purpose of avoiding responsibility. *Ibid.*

Each of the entities shared the same ownership under Gold, address in Boynton Beach, Florida, control structure, and held themselves out to the public as "SBG Media." *Id.* ¶ 21. The entities also used the same attorney, websites, domains, and personnel. *Ibid.* The entities jointly benefited from the PSA, jointly executed or accepted payments arising from it, and jointly communicated with Plaintiff about performance and indemnification. *Id.*

By reason of their concerted conduct, each Defendant acted as an agent and co-conspirator of the others. *Id.* ¶ 22. Each Defendant authorized, directed, ratified, or participated in the acts and omissions complained of herein, and each Defendant is therefore jointly and severally liable for the acts of the others. *Ibid.*

Allowing Defendants to select, after the fact, which entity they claim to have been the proper party to the PSA would create severe and unfair prejudice to Plaintiff, enabling Defendants to shift blame to a hollow or defunct affiliate while continuing to enjoy the benefits of the contract through other related entities. *Id.* ¶ 23.

## III.

## <u>STATEMENT OF LAW</u>

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed Rules Civ. Proc. R 8. The U.S. Supreme Court has clarified this standard in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A complaint must include sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), *Harvey v. CNN, Inc.*, 48 F.4th 257 (2022).

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. This standard is not a "probability requirement" but requires more than a mere possibility of unlawful conduct. *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), *Harvey v. CNN, Inc.*, 48 F.4th 257 (2022).

With regards to the joinder of ZeetoGroup, LLC, the "Court may not dismiss an action for failure to prosecute in the absence of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. Proc. R. 17 subd., (a).

/ / /

/ / /

/ / /

5

## IV.

## ARGUMENT

At the pleading stage, the Court must accept the SAC's well-pleaded factual allegations as true and draw all reasonable inferences in Plaintiff's favor. Defendants' arguments—grounded in disputed facts about entity identity, assignment, and course of performance, and supported by extra-pleading materials—are better suited for summary judgment or trial after discovery, not a Rule 12(b)(6) motion.

### A. ZeetoGroup, LLC will be Joining the Action as a Plaintiff

On March 10, 2026, Plaintiff's counsel, Jacob A. Gillick, Esq., requested a stipulation from Defendants' counsel to amend the Complaint so ZeetoGroup, LLC may join as a Plaintiff. (Declaration of Jacob A. Gillick, Esq. ("Gillick Decl."), Ex. 1.) This should cure any issues or potential defenses regarding the real party in interest and eliminate Defendants' technical arguments premised on the PSA's named signatory. If Defendants refuse to stipulate, Plaintiff respectfully requests leave to amend, which should be freely given.

### B. Plaintiff's Alter-Ego and Conspiracy Allegations are Sufficient

As described in the SAC, Defendants' position as to which SBG entity is responsible has shifted. For example, the SAC alleges that SBG Media Enterprise, LLC ("SBG Enterprise") "signed Tibrio's PSA for the transmission of e-mail campaigns" and "breached the PSA." SAC ¶ 7. The SAC further alleges: "Although SBG Media, Inc. executed the Publisher Services Agreement ('PSA'), it was not properly registered as a corporate entity at the time of execution. Upon initiation of the instant dispute, SBG Media Enterprise, LLC emerged as the operating arm of the same business, openly acknowledging involvement with the PSA and never disputing its liability under the agreement." SAC ¶ 19. This representation that SBG Enterprise was the operating arm was made directly by Defendants' counsel Kenneth Taylor and Defendant Gold. Gillick Decl. ¶ 3,

6

Exhibit 2.

Given the representations that one entity signed the agreement but another entity was actually the operating entity, the SAC alleges that "the SBG Entities were intentionally created, dissolved, and revived at different times to shield assets, obscure liability, and allow Defendants to choose whichever entity would be most financially convenient or judgment-proof in the event of a dispute." SAC ¶ 20. This allegation is supported by additional facts discussed below.

Plaintiff further alleges that Defendants' conspiracy and coordination have prejudiced Plaintiff by obscuring which SBG entity bears ultimate responsibility for contractual performance and indemnity. "Allowing Defendants to select, after the fact, which entity they claim to have been the proper party to the PSA would create severe and unfair prejudice to Plaintiff, enabling Defendants to shift blame to a hollow or defunct affiliate while continuing to enjoy the benefits of the contract through other related entities." *Id.* at ¶ 23.

**C. <u>SBG Media Enterprises, LLC and Andy Gold's Positions are Inconsistent and Subject to Judicial Estoppel</u>**

"The doctrine of judicial estoppel, sometimes referred to as the doctrine of preclusion of inconsistent positions, prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or earlier proceeding." *Board of Pilot Commissioners v. Superior Court*, 218 Cal.App.4th 577, 590 (2013). Judicial estoppel is invoked to prevent a party from changing its position over the course of judicial proceedings when such positional changes have an adverse effect on the judicial process. *Id.* at 590. The doctrine applies when: (1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position; (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake. *Id.* at 591.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

On or around May 20, 2025, after SBG Media, Inc. ("SBG Media") was served at their New York office, Plaintiff's counsel received a message from Gold requesting that SBG Media and SBG Resources be dismissed because they were not the proper/insured entities and that SBG Enterprise should be named. Gillick Decl., Ex. 2. Now, SBG Enterprise and Gold claim they are not the appropriate parties. This position is inconsistent.

Gold and SBG Enterprise filed an Answer to Plaintiff's FAC on July 15, 2025. Dkt. 12. Defendants do not deny anywhere in the Answer that they were a party to the PSA or that they are not the appropriate parties. They deny only the allegations that *all entities* were parties to the PSA.

On August 12, 2025, the other two Defendants, SBG Media and SBG Resources, filed a Motion to Dismiss. Dkt. 18. In the Declaration of Kenneth Taylor attached to the MTD, he indicates that SBG Enterprise and Gold are the proper parties while arguing SBG Media and SBG Resources are not. *Id.* at 18 ¶¶ 3, 5. In his renewed declaration here, Mr. Taylor now claims that "none of the named Defendants were parties to the PSA" while simultaneously admitting in the MTD that SBG Enterprise has a working relationship with Tibrio. Dkt. 48 at 15:14–15; Dkt. 47-1.

On July 15, 2025, Gold and SBG Enterprise filed a Third-Party Complaint for equitable indemnity and contribution for damages related to the PSA. Dkt. 14. In their Third-Party Complaint, Defendants allege that SBG Enterprise registered websites with Liquid Web and that Liquid Web caused the damages Tibrio seeks here. *Id.* ¶¶ 8–18. These positions are inconsistent and support the reasonable inference that Defendants are using entities interchangeably as further described below. If dismissed at this stage, Defendants will likely shuffle responsibility again in an attempt to avoid liability.

Finally, the allegations against Gold are that he "acknowledged his duty to indemnify Tibrio and repeatedly promised reimbursement." SAC ¶¶ 3, 9, 45.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Defendant attempts to ignore those allegations, and the fact that Gold has individually submitted an Answer and filed a Third-Party Complaint seeking indemnity under the PSA.

Based on the inconsistent positions of SBG Enterprise and Gold, Plaintiff requests the Motion to Dismiss be denied. The changing positions of the entities indicates that the conspiracy and alter-ego allegations are proper and should survive the pleading stage. In the alternative Plaintiff requests leave to amend to include allegations like Gold's e-mail stating SBG Enterprise is the appropriate party and representations made by Defendants' counsel.

## D. SBG Media, Inc. Should not be Dismissed

"It is hornbook law that a corporation can enforce pre-incorporation contracts made in its behalf, as long as the corporation 'has adopted the contract or otherwise succeeded to it. . .  Adoption or ratification may be express or implied. Indeed, one means of adopting a pre-incorporation contract is the corporation's institution of an action on it.'" *02 Development, LLC v. 607 South Park, LLC*, 159 Cal.App.4th 609, 612 (Cal. App. 2008). SBG Media's contention that it was not incorporated in Florida until 2020 does not warrant dismissal at the pleading stage and does not negate liability for the breaches alleged in 2024.

On April 30, 2025, SBG Media was served at 2071 Flatbush Ave. in Brooklyn, New York with the lawsuit. Gillick Decl., Ex. 3. On May 5, 2025, Plaintiff's counsel received notice that Gold was willing to accept service on behalf of all the other Defendants. *Id.*, at Ex. 2. Service of the lawsuit in New York clearly went directly to Gold. Through later discussions, Defendants' counsel and Gold represented that SBG Media is now located in Florida, but that SBG Enterprise would be the appropriate entity to sue. *Id.* at ¶ 3.

SBG Media attempts to present a partial story about incorporation and registration dates to distance itself. According to the New York Department of State—Division of Corporations, SBG Media was established in New York in

June 2010 with an address at 2071 Flatbush Ave., Brooklyn, New York. Gillick Decl., Ex. 4.

As alleged by Defendants, in 2020, SBG Media registered to do business in Florida. The SAC alleges that SBG Media was "not properly registered to conduct business in Florida, in violation of the PSA, but eventually registered years into the relationship." SAC ¶ 6.

According to a public records report obtained by Plaintiff's counsel, this filing in Florida coincides with the time frame Gold moved from Brooklyn to Boynton Beach, Florida. Gillick Decl. ¶ 6.

Most damning, in Defendants' Initial Disclosures provided to Plaintiff on June 26, 2024, Chris, using the e-mail address "Chris@sbgmediainc" requested registration information from Liquid Web. Gillick Decl., Ex. 5. The public nature of the registration information is at issue between Liquid Web and Defendants. In response to the request, Liquid Web disclosed that all of the domains were registered to "SBG Media Inc." at 2071 Flatbush Ave., Brooklyn, NY 11234. *Id,* The SBG representative then updated the information to SBG Media Inc. at 6586 W. Atlantic, Ste. 4871, Delray Beach, Florida. *Id*. This address is for a postal company called Mr. Shipper—using a mailbox drop like this is a practice used in the industry for safety purposes.

While SBG Media claims it is not involved and is not the proper entity, the PSA is signed by SBG Media; Defendants' disclosures reflect that someone using an "@sbgmediainc" email address managed domain-registration information for SBG Media, Inc.; and the records reflect SBG Media's move from New York to Florida. At minimum, these facts support Plaintiff's plausibly pleaded theory of ratification, alter ego, and enterprise liability and confirm that dismissal at the pleading stage would be improper. Plaintiff is confident that discovery will further substantiate these allegations. Therefore, Plaintiff requests the Motion to Dismiss be denied. In the alternative, Plaintiff requests leave to amend to add additional

allegations regarding SBG Media's involvement, if the Court deems it necessary.

### E. SBG Resources, LLC is a Proper Party

SBG Media Resources, LLC ("SBG Resources")  "once acted as a publisher for advertisers, including the transmission of marketing e-mails but has since transformed into an alleged payroll processing company. SBG Media Resources, LLC as another unregistered entity acting in concert with the Defendants provided services under Tibrio's PSA for the transmission of e-mail campaigns." SAC ¶ 8.

As described above, the SAC plausibly alleges there is no complete separation between the entities and that Defendants shuffle them at their convenience. Gold claimed SBG Enterprise was the appropriate Defendant; SBG Media is referenced throughout the Initial Disclosures; and Gold is the common thread. Accordingly, it is reasonable to believe SBG Resources is also involved given that it is headquartered at the same location as the other entities, is run by the same principal, uses the same counsel, and advances the same arguments. Plaintiff is concerned that if SBG Resources is dismissed now, Defendants will later contend SBG Resources was the proper party—consistent with the alleged scheme to avoid liability.

With respect to Defendants' registration-date arguments, the fact that a business was not registered at the precise time it entered an agreement does not, by itself, eliminate potential contractual liability—particularly where adoption or ratification is alleged. See *02 Development, LLC v. 607 South Park, LLC*, 159 Cal.App.4th 609, 612 (2008). Defendants' claim that they should be released because Mel Gold, who executed the PSA, is not a listed officer or agent likewise raises factual and agency issues not suitable for resolution on the pleadings. If needed, Plaintiff is prepared to take Mel Gold's deposition.

Finally, labeling SBG Resources as a "payroll company" is a factual defense. It does not negate Plaintiff's pleaded theory that SBG Resources was part of the enterprise that performed, benefited from, and then attempted to evade

responsibility for the PSA relationship. Those are precisely the unit-of-interest and common-control facts that require discovery.

SBG Resources shares a physical address with SBG Media and SBG Enterprise in Boynton Beach, FL and is also run by Andrew Gold. After conducting a Google search for SBG Media Resources, the first three results are sbgmediainc.com, sbgmedia.com, and a LinkedIn page for SBG Media. Gillick Decl. Exhibit 6. Companies like SBG are all about search results and it is not a coincidence that a search for SBG Resources resulted in web pages for SBG Media.

Defendants' actions indicate that they play fast and loose with the entities. Despite SBG Media being on the PSA and the only entity in the Initial Disclosures, Gold requested that SBG Enterprise be the named Defendant who turned around and named Liquid Web in a Third-Party Complaint. Plaintiff has sufficiently alleged that SBG Resources is likely involved in the scheme or actions related to the PSA. Therefore, Plaintiff requests that the Motion to Dismiss be denied.

**F. The Proper Parties have been Named and the Allegations are Sufficient**

As described above, Defendants have represented that SBG Enterprise is appropriately named. Gold and SBG Enterprise have filed an Answer and a Third-Party Complaint for indemnity under the PSA. SBG Media is clearly indicated in all of the initial disclosures, and SBG Resources shares all of the same assets as the other entities—masterminded by Gold.

Either Counsel and Gold were attempting to fraudulently induce Plaintiff into naming the wrong party so it could get out of the case later, or they are being disingenuous with their representations now. If the Court would like Plaintiff to include allegations in the Complaint related to Counsel and Gold's inconsistent statements and the Initial Disclosures, Plaintiff requests leave to amend. However, Plaintiff believes a better use of time and resources would be to deny the Motion

to Dismiss.

## G. **Plaintiff's Allegations for Each Cause of Action are Sufficient**

### 1. *Plaintiff's First Cause of Action Is Sufficiently Plead*

Defendants argue that Gold, SBG Media, and SBG Resources are not parties to the PSA and that they were not incorporated until 2020 and therefore should be dismissed. Not only is SBG Media the entity that executed the agreement, but the date of incorporation is irrelevant to the alleged breaches in 2024. A company does not need to be registered, especially if it is registered later, to be held liable under a contract. *02 Development, LLC v. 607 South Park, LLC* 159 Cal.App.4th 609, 612 (Cal. Ct. App. 2008). Also, it is clear that SBG Media was in New York then simply moved to Florida in 2020 based on the initial disclosures which includes "chris@sbgmediainc" changing the registration of websites from New York to Florida. Gillick Decl. Exhibit 5.

Further, and as described above, SBG Enterprise and Gold previously represented that they are the proper parties to the lawsuit through correspondence with Plaintiff's counsel, the Answer to the First Amended Complaint, and the filing of the Third-Party Complaint seeking indemnity for the PSA. Finally, all of the Defendants are located at the same address and are under the sole control of Gold.

With regards to assignment of the PSA from ZeetoGroup, LLC to Tibrio, the allegations are sufficient and Plaintiff is not required to provide "evidence," as demanded by Defendants' Motion to Dismiss, regarding the assignment. As alleged in the SAC, "ZeetoGroup, LLC was a signatory to the PSA. Tibrio used to be a subsidiary under ZeetoGroup, LLC that was conducting business pursuant to the PSA. In or around early 2016, Plaintiff Tibrio, LLC was established as a separate entity and assigned the agreement it was performing under. From that point, the name 'Tibrio' was on all invoices evidencing the parties' consent to the assignment." SAC, ¶ 39. SBG Enterprise also admits in its Motion to Dismiss that

it is doing business with Plaintiff. Dkt. 47. p. 15:14-15. This is not a summary judgment motion and as described above, ZeetoGroup, LLC will be joining this lawsuit as a Plaintiff to cure any issues and save resources.

The inconsistent arguments mixing up entities is indication that the alter-ego and conspiracy allegations are true and should defeat the Motion to Dismiss at this stage. Defendants have already shown their willingness to transfer liability and funds between entities and the dismissal of any entity at this stage will unfairly prejudice Plaintiff.

Accordingly, Plaintiff alleges sufficient facts to state a claim for breach of contract. If the Court requires additional detail, Plaintiff requests leave to amend. However, Plaintiff submits that the SAC's allegations are sufficient at the pleading stage and the Motion to Dismiss should be denied.

## 2. *Plaintiff's Second Cause of Action Is Sufficiently Plead*

Defendants claim that Plaintiff fails to identify the terms of the oral agreement and it cannot determine if the agreement was made. Not only has Gold already answered, filed a Third-Party Complaint, and produced Initial Disclosures in response to this allegation, but the terms of the oral agreement are clearly set out in the SAC.

"Repeatedly, SBG and Gold, jointly and severally, agreed to reimburse Tibrio for the costs incurred due to SBG's lack of compliance with relevant laws." SAC, ¶ 36. Further, Gold stated in a WhatsApp message between him and Shayne Cardwell of Tibrio on April 21, 2025, with regards to the lawsuit cost, "I would like to take care of that somehow." Gillick Decl. Ex. 7. This confirms the oral agreement for indemnity, that Gold was on notice, and he had promised "take care of it" repeatedly. Plaintiff has also sufficiently alleged that Gold was the alter-ego and co-conspirator of all his entities to hold them all jointly and severally liable.

Again, Plaintiff feels that it has sufficiently alleged an oral agreement to survive a Motion to Dismiss. If the Court would prefer additions of the WhatsApp

message and other details, Plaintiff requests leave to amend. However, Plaintiff feels that all parties are on sufficient notice of the allegations to move past the pleadings stage and the Motion to Dismiss should be denied.

### 3.   *Plaintiff's Third and Fourth Causes of Action Are Sufficient*

Defendant again claims that there was no contract between *any* of the Defendants and that Plaintiff is under the obligation to "prove" their allegations at this stage. That is incorrect and Defendants are clearly on notice of the allegations against them.

As described above, SBG Media signed the agreement; SBG Enterprise and Gold answered the FAC, sought indemnity from Liquid Web tied to the PSA, and represented to Plaintiff's counsel that they were appropriate parties to sue; and SBG Resources is plausibly tied to the same enterprise conduct. Based on the allegations made herein, Plaintiff requests the Motion to Dismiss be denied.

### 4.   *Plaintiff's Fifth Cause of Action is Sufficiently Plead*

"Separate and apart from the contractual terms detailed in the PSA, Defendants owed a duty to Plaintiff to comply with all relevant laws while acting as a publisher, and co-conspirators, of Plaintiff's marketing e-mails. Specifically, Defendants should have ensured that SBG's identifying information was properly transferred when a new company obtained SBG's domain providers. By not ensuring this transition complied with all applicable laws, SBG violated privacy laws and breached its duty to Plaintiff." SAC, ¶ 61.

Defendants recycle the same claim that none of the Defendants are proper. The allegations here are sufficient to move past the pleading stage. Therefore, Plaintiff requests that the Motion to Dismiss be denied.

/ / /

/ / /

/ / /

/ / /

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## V.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion to Dismiss should be denied. The SAC plausibly alleges that Defendants, operating interchangeably under Gold's control, accepted and benefited from the PSA relationship, assumed compliance-critical obligations for lawful email distribution, and then caused the third-party claims and settlement costs at issue while attempting to evade responsibility through shifting entity positions.

At the pleading stage, Defendants' fact-bound challenges to assignment, entity identity, and liability cannot be resolved on the papers, and the alter-ego, conspiracy, ratification, and estoppel allegations more than suffice to proceed to discovery. In any event, Plaintiff is prepared to add ZeetoGroup, LLC as a co-plaintiff to cure any technical real-party-in-interest concern, and leave to amend should be freely granted if the Court deems it necessary.

Dated:  March 11, 2026                    **Gillick Legal, APC**

By:  _____
Jacob A. Gillick, Esq.
Attorneys for Plaintiff Tibrio, LLC

16

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS